## LEACH *v.* STATE.

### Opinion delivered January 13, 1900.

LARCENY—EVIDENCE.—In a prosecution for larceny of cattle if there was a conflict of testimony as to the ownership of the cattle taken by defendant, it was error to exclude proof that the prosecuting witness had formerly given a mortgage of the cattle alleged to have been stolen wherein they were described as marked differently from the cattle which defendant was proved to have taken. (Page 316.)

Appeal from Lincoln Circuit Court, Varner District.

ANTONIO B. GRACE, Judge.

*D. H. Rousseau* and *J. Bernhardt*, for appellant.

The evidence fails to establish any felonious intent, and is therefore insufficient. 1 Bish. Cr. Law, § 105; 17 Mo. 379. The evidence also fails to identify the property. 32 Ark. 283; 1 Greenl. Ev. §§ 33, 35, 87b; 2 *ib.* § 157. It was error to refuse to permit appellant to cross examine witness Brewer as to what and how many cattle he had mortgaged. 14 Ark. 555; 25 Ark. 380; 42 Ark. 542; 43 Ark. 99; Whart. Cr. Ev § 263; Bish. Cr. Proc. § 625. The venue was not proved.

*Jeff Davis, Attorney General,* and *Chas. Jacobson,* for appellee.

BUNN, C. J. This is an indictment against Robt. Leach for cattle-stealing, tried and determined on a plea of not guilty, in the Varner district circuit court of Lincoln county, resulting in a judgment of conviction, from which the defendant appealed to this court.

The first ground in the motion for a new trial is that the venue was not established by the evidence. Monk Panel, a witness for the state, testified that on one occasion, in company with Drew Conine, he met the defendant with nine head of cattle, which he said he intended to sell to a Mr. Freeman, but, on being informed that Freeman was not at home, thereupon,

after some talk, defendant sold the cattle to Conine, who seemed to be a cattle trader. The price was forty-five dollars for the nine head, and this sum was paid in cash by Conine. Witness did not know that this sale was made in Desha or Lincoln county, but from circumstances he was of the opinion it was in Desha county. The time was 2 or 3 o'clock in the afternoon, and the cattle were being driven by defendant on the public road, between Burnet's store and the ferry. He knew one county line, and, relative to this line, the trade was made in Desha county. Such, at least, is the purport of witness' language as to the place. This witness also testified that defendant at the time said that he had purchased the cattle to sell the same to Mr. Freeman. Drew Conine testified that he did not know whether Burnet's store, where he paid for the cattle, was in Lincoln county or not. The cattle were to be delivered to witness at Ross' Ferry.

Jack Ross testified that the trade was made in Desha county, at Pendleton. Henry Harris, after identifying the occasion, testified that he met some cattle in the lane near his house, and met defendant at his gate, "and he asked me, if I noticed the cattle, and, being answered in the negative, he said, 'Notice them, and see if you know them.' On telling him that I did not know them, he said, 'I want to be right with them.'" Witness said that this took place in Lincoln county, but that he did not know the district. He said, however, that he paid taxes here (referring to Varner, the place of testifying.) Charles Brewer testified that the nine head of cattle he lost were ranging about two miles from his place in Varner district of Lincon county, and that he was in the habit of seeing them once every week, looking after them. The defendant testified that his father had given him the cattle which he sold to Conine on the occasion referred to by the other witnesses; that the cattle ranged about his father's and his home in Desha county; that they were given to him about a month before he sold to Conine, with the instructions to sell them; that he got the cattle, before he started with them, near the house of King Smith. On being asked if his father gave him nine head of cattle, he said he gave him all he could find. De-

nies that he told Harris that he had bought the cattle. Miles Leach, father of defendant, testified that he had about thirty-five head of cattle on the range near the Johnson place, where King Smith lived, and at the upper end of the Ellis place. The latter is in Desha county, but the Johnson place is in Lincoln county. Witness was indefinite as to language he used in making the gift of the cattle to defendant. King Smith testified to the meeting of himself and defendant. It was in Desha county. The latter had the nine head of cattle. These had ranged about defendant's father's a long time. Defendant told him he was taking them to Freeman to sell them to him. Witness said the cattle belonged to Miles Leach, the father of defendant. He knew nothing about Charlie Brewer's cattle. He lived about three miles from witness. King Smith also says this meeting was in Desha county, or at least that he saw defendant with the nine head of cattle there at or about that time. Nelson Smith, brother of the last, testifies about the same, except that he did not know how many cattle there were. Both of the Smiths say some of the nine were marked as they noticed, but none had an underbit in the left ear. There was some other evidence as to the venue. It is confusing somewhat, for the reason that witnesses may not all have had reference in their statements to the same cattle, and the exact place of the consummation and completion of the trade is a matter of uncertainty. Upon the evidence, however, the jury expressly found that the venue was properly proved as laid.

The next question was that of the ownership of the property in Brewer, the prosecuting witness, and the identity of the property he claimed to have lost, and described in the indictment, with the cattle found in possession of defendant, and sold by him to his co-defendants, Conine and Panel. The proof as to identity by marks was quite unsatisfactory. It was a little stronger by flesh marks as to some of the nine cattle, but unsatisfactory upon the whole. It appears that Brewer, the alleged injured party, had mortgaged a number of cattle to one Nick Smith sometime previously to the finding of the indictment in this case, and it appears also that he had been indicted for removing or disposing of mortgaged property

sometime before this indictment was found. What mortgage or what property conveyed therein, we are not at liberty to say from the testimony adduced. On the trial, Brewer being on the witness stand on cross-examination, after several questions leading up to the desired point, defendant's counsel asked him the following questions: "Is that the same property that you are testifying about [the property he had sold] that was mortgaged to Nick Smith, and mentioned in the indictment against you?" Here the state objected, and the court sustained the objection, and defendant excepts to the rulings, and thereupon made the following explanation of his object in propounding the question and requiring an answer to the same, viz: "Defendant's counsel then announced to the court that their object in propounding these questions to the witness was for the purpose of contradicting his ownership to the property and mark, and that the mortgage to Smith included all his cattle, and they were described as being marked with a crop off the right ear and overbit in left, and that they would prove these facts, and connect it with the issue, and offered to read the mortgage and the indictment at the proper time as evidence." The venue as laid in the indictment, and the identity of the property alleged to have been stolen with that found in the possession of defendant, and afterwards sold by him to his co-defendants, were both established by the verdict of the jury, but both upon very uncertain and unsatisfactory evidence. There was the wavering balance, subject to the least weight on either end, especially as to the identity of the property. Under this state of things, the defendant asked to introduce the mortgage for the purpose of showing that the cattle of the defendant therein described were not described as defendant's cattle in this indictment were described; and in this connection defendant also offered to prove that the cattle in the indictment included all the cattle Brewer owned at the time of the indictment, and to make other proof to connect the mortgaged property with the issue of Brewer's ownership of the property included in this indictment, and thereby to impeach or weaken the testimony of Brewer, by showing that in said mortgage he had represented

himself as the owner of cattle of a certain description, whereas as a witness in this case he was testifying that the cattle alleged to have been stolen from him was of another mark, and that in this way he had made contradictory statements as to these cattle and his ownership thereof. Under the circumstances, we say, we are of opinion that, for this purpose, and this alone, defendant was entitled to this testimony, and in refusing to admit it the court erred. The error was material, and the judgment is therefore reversed, and the cause remanded for a new trial.